**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOSEPH MELE,<br>*Plaintiff*,<br>v.<br>MEDIDATA SOLUTIONS, INC.,<br>*Defendant*. | Civil Action No. 2:25-cv-03704-ES-JBC<br><br>Hon. Esther Salas, U.S.D.J. |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MEDIDATA SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION**
**RETURNABLE FEBRUARY 2, 2026**

PRICE, MEESE, SHULMAN & D'ARMINIO, P.C.
Ellen O'Connell, Esq.
50 Tice Boulevard
Woodcliff Lake, NJ 07675
(201) 391-3737
Attorneys for the Plaintiff, Joseph Mele

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii-iii

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 2

A. The Parties ..... 2

B. Defendant's Going Private and Delisting ..... 2

C. Plaintiff's Claims ..... 3

D. Plaintiff's Sarbanes Oxley Complaint to OSHA ..... 4

STANDARD OF REVIEW ..... 5

POINT I - WHETHER THE PLAINTIFF'S CLAIMS ARE ARBITRABLE SHOULD BE DECIDED BY THIS COURT BECAUSE DEFENDANT FAILED TO DEMONSTRATE A CLEAR AND UNMISTAKABLE DELEGATION OF ARBITRABILITY TO THE ARBITRATOR. ..... 6

POINT II - THE MUTUAL ARBITRATION AGREEMENT EXPLICITLY EXCLUDES PLAINTIFF'S CLAIMS FROM ARBITRATION ..... 11

A. MISAPPROPRIATION OF CONFIDENTIAL INFORMATION IS EXCLUDED FROM ARBITRATION ..... 11

B. SOX WHISTLEBLOWER RETALIATION IS EXCLUDED FROM ARBITRATION ..... 11

POINT III - THIS COURT IS URGED TO CONCLUDE THAT DEFENDANT DEPRIVED PLAINTIFF OF HIS RIGHT TO BRING A SARBANES OXLEY CLAIM, AND TO EXERCISE ITS EQUITABLE AUTHORITY TO FIND A REMEDY FOR THIS WRONG. ..... 15

CONCLUSION ..... 15

# TABLE OF AUTHORITIES


CASES PAGE

Ackies v. Scopely, Inc.,
No. 19-cv-19247, 2022 WL 214541 at *8 (D.N.J. Jan. 25, 2022) ........ 9

Allstate v. Toll Bros., Inc.,
171 F. Supp. 3d. 417, 428 (D.C. E.Pa. 2016) ........ 11, 12

Anderson v. Liberty Lobby,
477 U.S. 242, 248 (1986) ........ 7

Blueprint Cap. Advisors, LLC v. Div. of Inv.,
2023 U.S. App. LEXIS 34032, at *7 (3d Cir. Dec. 22, 2023) ........ 11

Cabrera v. Verizon,
No. 24-7780-ES-AME, 2024 WL 4818091, at *4 (D.N.J. No. 18, 2024) ........ 9

Campbell Soup Co. v. Wentz,
172 F. 2d 80, 83 (3d Cir 1948) ........ 12

Chesapeake Appalachia, LLC v. Scout Petrol., LLC,
809 F.3d 746, 763–64 (3d Cir. 2016) ........ 10

Crane v. Bielski,
15 N.J. 342, 349 (1954) ........ 15

Fallo v. High-Tech Institute,
559 F. 3d 874 (8th Cir. 2009) ........ 9

Garfinkel v. Morristown Obstetrics & Gynecology Assoc,
168 N.J. 124 (2001) ........ 7

GUIDOTTI V. LEGAL HELPERS DEBT RESOLUTION, L.L.C.,
716 F.3d 764 (3d Cir. 2016 ........ 5

Kaucher v. Cnty. Of Bucks,
455 F.3d418, 423 (3d Cir. 2006) ........ 5

MHA LLC v. United Healthgroup,
No. 15-7825 (ES)(JAD), 2017 WL 1095036, at *5 (D.N.J. Mar. 23, 2017) ........ 7

Montes v. Paymentus Group Inc.,
No. 24-7450 (EP) (JBC) (Apr. 14, 2025) .......... 5, 7

Mood v. Breathless, Inc.,
868 F. 3d 209, 214-15 (3d Cir. 2017) .......... 7

MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds,
974 F.3d 386, 398 399, (3d Cir.2020) .......... 6

Ohio Cas. Ins. Co. v. Benson,
87 N.J. 191, 199 (1981) .......... 13

Orlowski v. Orlowski,
459 N.J. Super. 95 (App. Div. 2019) .......... 13

Quigley v. KPMG Peat Marwick, LLP,
330 N.J. Super. 252, 270 (App. Div. 2000) .......... 13

Remicade (Direct Purchases) Antitrust Litig.,
938 F. 3d 515, 525-526 (2d Cir. 2019) .......... 6

Richardson v. Coverall North. America, Inc.,
8911 F. App'x 100, 103 (3d Cir. 2020) .......... 7, 8

Richardson v. Coverall N. Am., Inc.,
811 Fed. Appx. 100, 103, 2020 U.S. App. LEXIS 13568, *5, 2020 WL 2028523 .......... 10

YOUNG V. EXPERIAN INFO. SOLS,
119 F.4th 314 (3d Cir. 2024) .......... 5

**STATUTES & RULES**

Sarbanes-Oxley Act, 18 U.S.C. 1514A (a) .......... 1, 4, 12,13

Securities Exchange Act of 1934 (15 U.S.C. 78l) .......... 4

Fed. R. Civ. P. 56 (a) .......... 7

Federal Arbitration Act, 9 U.S.C. §2 .......... 5

## PRELIMINARY STATEMENT

This is the Defendant, Medidata Solutions, Inc.'s (the "Defendant" or "Medidata") motion to compel arbitration and stay this action. Plaintiff opposes the motion because his claims are allegedly excluded by the list of Claims Not Covered in the Arbitration Agreement: i.e., his claim of misappropriation of confidential information, and his whistleblower retaliation claim under Sarbanes Oxley Act ("SOX").

Defendant also claims that the parties agreed to delegate questions of arbitrability to the arbitrator, relying on the wording, "the parties will use the American Arbitration Association," without identifying specific set of AAA rules, and only stating a URL (http:/adr.org/Rules). In the context of New Jersey's high standards for employment arbitration, the Defendant's claim is flawed because neither the Agreement nor the URL states a specific set of AAA Rules. Absent that, there can be no clear and unmistakable delegation to the arbitrator because the argument lacks the specificity required for there to be preclusion. Therefore, the question of arbitrability belongs to this federal court.

One year after Plaintiff signed the Mutual Arbitration Agreement, Medidata went private in a merger with a French conglomerate, with no notice to the Plaintiff as to how that would impact his ability to make claims that fall under Sarbanes Oxley and the like. It delisted from NASDAQ and withdrew its registration from the Securities and Exchange Commission. Thus, when the Plaintiff attempted to pursue his SOX claim, the Department of Labor/OSHA refused to open a file (O'Connell Cert. at ¶¶9-11). Defendant's unilateral act, without notice to the Plaintiff, modified the Agreement and deprived Plaintiff of his right to bring claims for SOX whistleblower retaliation before a jury in an open court. These are rights that he thought he retained. He was never told that, as a result of the merger, those rights would be arguably lost

forever. Applying New Jersey law, this Court may exercise its equitable authority and provide a remedy to the wrongful act by refusing to compel arbitration and permitting plaintiff to pursue his whistleblower retaliation claims in Court.

## STATEMENT OF FACTS

A. The Parties

The Plaintiff was Vice President, Global Partners of Medidata which provides cloud-based computer systems for clinical research supporting pharmaceutical development. Compl. ¶6; Defendant's Statement of Undisputed Material Facts ("SUMF") at ¶1-2. Medidata has up to 90% market share in large and mid-size clinical research organizations ("CROs"). More than 70% of novel drugs approved by the FDA in 2022 used Medidata software. Compl. ¶5. It is a worldwide leader of software that supports clinical research.

B. Defendant's Going Private and Delisting

Plaintiff commenced employment in 2018. The parties agree that he signed the Mutual Arbitration Agreement on November 1, 2018 (Salzberg Decl. Ex. A).

When plaintiff joined Medidata, it was publicly traded on NASDAQ and made the mandatory SEC filings required by companies publicly traded in the U.S. See, O'Connell Cert. ¶ 3. At the time that Plaintiff entered into his employment agreement he had an understanding that because he was working for Medidata, as a publicly traded company, there were certain protections that he would be afforded, specifically, that by engaging in whistle blower activities he would be protected by state and federal laws. Mele Certification at ¶3.

Defendant entered into a merger agreement with Dassault Systemes, a French multinational software conglomerate (https://www.3ds.com/) which was consummated on or about October 28, 2019. O'Connell Cert. at ¶¶4,5 6. Defendant terminated its SEC registration

on November 8, 2019, all of which took place without informing the Plaintiff as to how that would impact his rights under his employment agreement. Mele Cert. at ¶5.

One year after the Mutual Arbitration Agreement became effective, the Defendant became a private corporation. O'Connell Cert. at ¶6-7 and Ex. A.

C. Plaintiff's Claims for Misappropriation of Confidential Information and Whistleblowing

Medidata sells its software to CROs, and both enter into a "Medidata Partnership Agreement" (the "Partnership Agreement") by which Medidata licenses to the CROs the right to use the software and platform for clinical trials that the CROs conduct for the CRO's customers, the pharmaceutical companies.

There is a clause in the Partnership Agreement requiring Medidata not to use confidential information, including "Partner Data", without the prior written consent of the Partner [CRO]." Complaint at ¶ 14. Partner Data includes the information that the CRO gives Medidata about the sales the CROs make to the pharmaceutical companies, including when the CRO presents a bid to a pharmaceutical company, the prices they are bidding, and data showing when the CRO is the successful bidder and wins the contract with the pharmaceutical company. Id.

Plaintiff's Complaint alleges that Medidata sales employees used CROs' confidential sales data to undercut CROs pricing to the pharmaceutical company buyers, and thereby rob the CROs of their successful sales contracts. The actions were fraudulent and breached the Partnership Agreements between Medidata and the CROs. The Complaint alleges that in 2023 and 2024 the Plaintiff engaged in protected, whistleblower activities by complaining to management about these sales practices that the Plaintiff claims were improper and fraudulent. Compl. ¶¶11-35.

The merger with Dassault Systemes also resulted in Medidata being relieved of

compliance with SEC rules on financial reporting which it had been obligated to report as a publicly traded company before the merger.

The Complaint alleges that after several of plaintiff's protests, Defendant retaliated, demoting him to lower ranked supervisor and constructively discharging him. Compl. ¶¶24-34. In fact, the demoted position had no job description, sales targets, bonus statement or direct reports. It was a dead end job with no real title, power, or ability to succeed.

D. Plaintiff's Sarbanes Oxley Complaint to OSHA

Plaintiff attempted to exhaust the administrative procedure to secure his right to bring his SOX complaint in court. He filed his "Whistleblower Retaliation Complaint under Sarbanes Oxley Act," on February 12, 2025, with the Department of Labor, Occupational Safety and Health Administration ("OSHA") copy attached as O'Connell Cert Exhibit B**.** On February 18, 2025, Paul A. Yacono, Regional Investigator for U.S. Department of Labor, OHSA replied, advising that he must close plaintiff's file id. at Exhibit C:

> I have thoroughly looked for coverage under SOX (18 U.S.C. 1514A) provisions for the Respondent, Medidata Solutions Inc, including its parent companies, Dassault Systemes Americas Corp, and Dassault Systemes Deutschland GmbH.
>
> Unfortunately, none of these companies are:
>
> • Publicly traded companies (i.e., **companies with a class of securities registered under section 12 of the Securities Exchange Act of 1934**);
>
> • **Companies required to file reports under section 15(d) of the Securities Exchange Act of 1934**;
>
> • Subsidiaries or affiliates whose financial information is included in the consolidated financial statements of such companies;
>
> • Nationally recognized statistical rating organizations (as defined in 15 U.S.C. 78c(a)(62)); and
>
> • Contractors, subcontractors, agents, officers, and employees of covered companies and nationally recognized statistical rating organizations.

as required by SOX. (Emphasis in the original).

Mr. Yocono confirmed the closing of the plaintiff's SOX complaint in his letter dated February 18, 2025, id. at Exhibit D.

Plaintiff filed his New Jersey Superior Court Complaint on April 1, 2025. The Complaint has three Counts alleging violations of the N.J. Conscientious Employee Protection Act, *Pierce* Wrongful Discharge in Violation of Public Policy, and Unjust Enrichment.

## STANDARD OF REVIEW

This is the Defendant's motion to compel arbitration and stay this action. In an earlier motion for the same relief, both parties agreed that the motion should be considered under F.R. Civ. P. 56 pursuant to Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764 (3d Cir. 2016. Young v. Experian Info. Sols," 119 F.4th 314 (3d Cir. 2024).

Under the Rule 56 standard, in deciding whether there is an agreement to arbitrate this claim, the Court must draw all reasonable inferences in favor of the Plaintiff, the nonmoving party, Guidotti, supra at 772, Young, supra, at 320, "considering such grounds as exist at law or in equity for the revocation of any contract." Federal Arbitration Act, 9 U.S.C. §2. Plaintiff's arguments lie in both law and equity, for it would be unjust to deprive the Plaintiff of his rights without notice pursuant to his employment agreement.

The motion may only be granted if the Defendant "shows that there is no genuine dispute as to any material fact and is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a) An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable trier of fact could find in favor of the non-moving party." Kaucher v. Cnty. of Bucks, 455 F.3d418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

**POINT I**

WHETHER THE PLAINTIFF'S CLAIMS ARE ARBITRABLE SHOULD BE DECIDED BY THIS COURT BECAUSE DEFENDANT FAILED TO DEMONSTRATE A CLEAR AND UNMISTAKABLE DELEGATION OF ARBITRABILITY TO THE ARBITRATOR.

The question of arbitrability should be decided by this Court because the Mutual Arbitration Agreement does not clearly and unmistakably show that the parties agreed to delegation to an arbitrator. MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds, 974 F.3d 386, 398 399, (3d Cir.2020).

Medidata claims that this term in the Agreement is a "valid delegation of the arbitrability issue to the arbitrator," (Defendant's Brief at 14):

> Arbitration procedures: The parties will use the American Arbitration Association ("AAA") subject to its applicable and then-current arbitration rules and procedures, which are available at http://adr.org/Rules. Unless those rules and or procedures conflict with any express item of this Agreement, in which case this Agreement is controlling. * * *
>
> Time Limitation for Commencing Arbitration: Except as otherwise provided in this Agreement, any arbitration is to be commenced consistent with and in the manner provided by the then-current AAA rules arbitration rules and procedures.

Defendant cites to precedents concluding "that an agreement's incorporation by reference of AAA Rules constitute clear and unmistakable evidence that the parties agreed to arbitrate gateway issues." Id. The reasoning and precedents are contradicted by New Jersey Supreme Court dictates and, further, are factually flawed.

The New Jersey Supreme Court treats employment arbitration agreements differently than commercial contracts. "See, Remicade (Direct Purchases) Antitrust Litig., 938 F. 3d 515,

525-526 (2d Cir. 2019). "For employment agreements parties have "unequal bargaining power and levels of sophistication," a valid arbitration claim must (1) identify the general substantive area [of] arbitration (2) reference the types of claims subject to arbitration and (3) explain the difference between arbitration and litigation (citation omitted); Garfinkel v. Morristown Obstetrics & Gynecology Assoc., 168 N.J. 124 (2001); Mood v. Breathless, Inc., 868 F. 3d 209, 214-15 (3d Cir. 2017)," Montes v. Paymentus Group Inc., No. 24-7450 (EP) (JBC) (Apr. 14, 2025).

Defendant only cites to commercial cases and *none* of the four cases cited by the Defendant involve arbitration of employment disputes or address the N.J. Supreme Court's concern for employees. *All* concern commercial disputes which do not have to meet this higher standard. Richardson v. Coverall North. America, Inc., 8911 F. App'x 100, 103 (3d Cir. 2020) (class action for franchise agreement); Cabrera v. Verizon, No. 24-7780-ES-AME, 2024 WL 4818091, at *4 (D.N.J. No. 18, 2024)(Fair Credit Reporting Act claim related to an internet service contract); Ackies v. Scopely, Inc., No. 19-cv-19247, 2022 WL 214541 at *8 (D.N.J. Jan. 25, 2022) (class action Consumer Fraud Act claim related to videogame sales); MHA LLC v. United Healthgroup, No. 15-7825 (ES)(JAD), 2017 WL 1095036, at *5 (D.N.J. Mar. 23, 2017) (Salas, J.) (health insurance participation by hospital where agreement has the specific term, 'all questions of arbitrability must be arbitrated').

Second, in all but one of the cases cited by the Defendant, the respective parties *identified within their arbitration agreement exactly which AAA Rules would apply to the arbitration*. This is not true for the Mele/Medidata Agreement. Richardson v. Coverall N. America, Inc., 8911 F. App'x 100, 103 (3d Cir. 2020) (AAA Commercial Arbitration Rules); Cabrera v. Verizon, No. 24-7780-ES-AME, 2024 WL 4818091, at *4 (D.N.J. No. 18, 2024)(plaintiff did not oppose

Verizon's motion; Verizon applied AAA Consumer Arbitration Rules) Ackies v. Scopely, Inc., No. 19-cv-19247, 2022 WL 214541 at *8 (D.N.J. Jan. 25, 2022) (AAA Supplementary Procedures for Consumer-Related Disputes). Thus, Defendant relies on commercial cases, where courts have found "clear and unmistakable" delegation to arbitrators when sophisticated businesspeople agreed to exactly which AAA rules will apply to any dispute. That conclusion does not apply to this court's analysis.

These two points -- citing to *no* employment arbitrations and relying on cases where the specific AAA rules are stated in the parties' arbitration agreements -- show that the cases cited by defendant are irrelevant to this Court's consideration.

In deciding arbitrability, the commercial cases cited by Defendant conclude that just stating the name of the specific AAA rules governing the gives notice that the parties delegate arbitrability to the arbitrator in the commercial setting.

The Mutual Arbitration Agreement in this case failed to cite any specific AAA rules that would govern their arbitration. Their Agreement only cites the URL, http://adr.org/Rules. The Court may take judicial notice of the fact that accessing this internet site only leads to a blank dialogue box. An employee must have the presence of mind to figure out what to type in the dialogue box. Typing "employment" results in 23 different employment dispute rules, which is effectively a dead end and cannot be notice of anything, much less delegation of arbitrability decision to an arbitrator.

Richardson v. Coverall N. Am., Inc., supra, at fn.1 addressed the problem of when the arbitration agreement fails to identify which AAA rules apply.

> Even where an agreement incorporates the AAA Rules, a contract might still otherwise muddy the clarity of the parties' intent to delegate. For example, in Chesapeake Appalachia, LLC v. Scout Petrol., LLC, 809 F.3d 746, 763–64 (3d Cir. 2016), we held that

> the mere incorporation of unspecified AAA rules did not demonstrate an intent to delegate arbitrability in a class action. We explained that finding clear and unmistakable evidence in that case required jumping from 1) the contract, to 2) the reference to unspecified AAA rules, to 3) the AAA Commercial Rules and, lastly, to 4) the AAA Supplementary rules, which ultimately vested an arbitrator with the authority to decide class arbitrability. 809 F.3d at 761. But [the plaintiff in Richardson]'s contract requires no such "daisy-chain" of inferences. *Id*.

In Blueprint Cap. Advisors, LLC v. Div. of Inv.,2023 U.S. App. LEXIS 34032, at *7 (3d Cir. Dec. 22, 2023) the Third Circuit held:

> Because the AAA Rules empower an arbitrator to resolve arbitrability questions, their incorporation into an arbitration agreement may constitute a clear and unmistakable delegation of arbitrability, so long as the parties' agreement does not present ambiguity as to that delegation. Emphasis added).

In Allstate v. Toll Bros., Inc., 171 F. Supp. 3d. 417, 428 (D.C. E.Pa. 2016) not a New Jersey employment arbitration case) holding that referring to AAA rules in the arbitration agreement is *not* clear and unmistakable evidence of an agreement to delegate arbitrability. While the court acknowledged that "[v]irtually every circuit to have considered the issue has determined that incorporation of the AAA rules constitute clear and unmistakable evidence that the parties agreed to arbitrate arbitrability," id. at 427, nevertheless, the court made a distinction for plaintiffs such as Mr. Mele:

> But this apparent consensus among the circuits is not as clear as it seems. Nearly every circuit to have addressed the issue, save the Eighth Circuit. In Fallo v. High-Tech Institute, 559 F. 3d 874 (8th Cir. 2009), addressed the question in the context of arbitration agreements entered into by organizations, not unsophisticated individuals. [citations omitted]. Allstate supra at 427.

The Allstate court concluded that the reference to AAA within an arbitration agreement is not a "clear expressed delegation of arbitrability to the arbitrator" and "appears to be an open question in this [Third] Circuit."

> [T]his Court concludes that a cross reference to a set of arbitration rules containing a provision that vests an arbitrator with the authority to determine his or her own jurisdiction does not automatically constitute clear and unmistakable evidence that the parties intended to arbitrate threshold questions of arbitrability -- at least when those parties are unsophisticated. "Id. at 428.

and

> But incorporating forty pages of arbitration rules into an arbitration clause is tantamount to inserting boilerplate inside of boilerplate, and to conclude that a single provision contained in those rules amounts to clear and unmistakable evidence of an unsophisticated party's intent would be to take "a good joke too far." See, Campbell Soup Co. v. Wentz 172 F. 2d 80, 83 (3d Cir 1948). Allstate supra at 427

This observation, that the delegation clause is "boiler plate inside of boilerplate," complements the image of a job applicant handed many documents when onboarding a new job, one of which is an arbitration agreement. Holding that the "daisy chain" reference to unspecific AAA rules, as is what occurred here, presumes that a job applicant will make the intellectual leap from reading what the plaintiff read ["The parties will use the American Arbitration Association ("AAA") subject to its applicable and then-current arbitration rules and procedures, which are available http://adr.org/Rules"] to conclude that questions of arbitrability are not made by a judge, *even though no specific set of rules has been identified*. This is a leap too far. Accord, Richardson v. Coverall N. Am., Inc., 811 Fed. Appx. 100, 103, 2020 U.S. App. LEXIS 13568, *5, 2020 WL 2028523 (even if AAA rules are incorporated, a contract "might still otherwise muddy the clarity").

The question of whether there was effective delegation of arbitrability to the arbitrator is a matter for this court. The court is urged to hold based on this sound authority and the fairness to the plaintiff that there is no evidence of effective delegation to an arbitrator.

## POINT II

### THE ARBITRATION AGREEMENT EXPLICITLY EXCLUDES PLAINTIFF'S CLAIMS FROM ARBITRATION.

Plaintiff opposes this motion because his claims are excluded by the plain language of the parties' Agreement. The Agreement has two exclusions: misappropriation of confidential information and claims cases based on federal laws for which arbitration is prohibited.

### A. MISAPPROPRIATION OF CONFIDENTIAL INFORMATION IS EXCLUDED FROM ARBITRATION

The misappropriation of CRO confidential information is covered by this section of the Agreement:

> Claims Not Covered
>
> • Claims for: theft; misappropriation or misuse of trade secrets, confidential information, or intellectual property; or for breach of the Employee Confidentiality, Invention Assignment and Restrictive Covenant Agreement between me and Medidata (including Medidata's subsidiaries). (emphasis added).

The Agreement clearly excludes the claim raised in Plaintiff's Complaint. Plaintiff's Complaint at ¶¶14-15 alleges that the Partnership Agreement between Defendant and its CROs requires the Defendant to treat "Partner Data" as confidential. Partner Data includes the information that the CRO gives Medidata about the sales the CROs make to the pharmaceutical companies, including when the CRO presents a bid to a pharmaceutical company, how they are bidding, and when the CRO is the successful bidder and wins the contract with the

pharmaceutical company. When Plaintiff repeatedly objected to salespersons using covertly and fraudulently using Partner Data to under bid sales already awarded to CROs, he was constructively discharged.

B. THE SOX WHISTLEBLOWER RETALIATION CLAIM IS EXCLUDED FROM ARBITRATION.

The Mutual Arbitration Agreement's term, "Claims Not Covered by this Agreement" states:

> • Any claim that is expressly precluded from arbitration by a governing federal law or by a state law that is not preempted by the Federal Arbitration Act ("FAA") or other federal law.

The Sarbanes-Oxley Act, 18 U.S.C. 1514A (a) ("SOX") "expressly precludes" whistleblower retaliation claims from arbitration. Thus, the Plaintiff's whistleblower retaliation claim is excluded from arbitration.

Plaintiff attempted to secure his right to pursue his claim in court by filing a whistleblower retaliation complaint a claim on February 12, 2025, with the Department of Labor, Occupational Safety and Health Administration, (O'Connell Cert. at Ex. B). The OSHA agent administratively closed the claim reporting that the defendant was no longer a public company, having been delisted from NASDAQ upon defendant's merger with Dassault Systemes, a French multinational conglomerate; and that Dassault Systemes and its parent were not registered with the SEC. See, Statement of Facts, supra at 4-5. Prior to this Plaintiff did not know or understand that his rights had been potentially altered as a result of the lack of registration.

The Defendant's unilateral acts deprived plaintiff of the promised SOX whistleblower exclusion from arbitration, especially since result from the merger and delisting were done without notice to Plaintiff, Mele Cert. ¶5. While the substantive claim of whistleblower retaliation survived, only to be heard in arbitration, the right to a jury trial in court for SOX

whistleblower retaliation was unilaterally and by default, removed from the Agreement, with no notice and no written modification of the Agreement.

According to the Agreement, Defendant's delisting could not modify the Arbitration Agreement. In the Agreement's section, "Modification, Termination and Integration" the parties agreed, "No modification of or amendment to this agreement shall be effective unless in writing signed by both parties." Medidata gave no notice to the plaintiff of this material modification of the Arbitration Agreement. There is no writing signed by both parties showing an agreement to give up claims under SOX. Plaintiff contends that, without a writing signed by both parties, the promised exclusion of the whistleblower claim is still in effect, and the fair result is allowing the State law CEPA claim to proceed in court.

**POINT III**

THIS COURT IS URGED TO CONCLUDE THAT DEFENDANT DEPRIVED PLAINTIFF OF HIS RIGHT TO BRING A SARBANES OXLEY CLAIM, AND TO EXERCISE EQUITABLE AUTHORITY TO FIND A REMEDY FOR THE WRONG.

In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine whether there is a valid agreement to arbitrate and, if so, whether this specific dispute falls within the scope of that agreement. "[I]n determining whether the parties have agreed to arbitrate, state law contract principles apply." Quigley v. KPMG Peat Marwick, LLP, 330 N.J. Super. 252, 270 (App. Div. 2000). New Jersey's contract principles incorporate principles of equity, including the equitable maxim, "Equity will not suffer a wrong without a remedy," Orlowski v. Orlowski, 459 N.J. Super. 95 (App. Div. 2019) (quoting Crane v. Bielski, 15 N.J. 342, 349 (1954)).

In addition, State law disfavors piecemeal litigation. Thus, equity will be served by permitting all of the Plaintiff's claims to be heard in one forum, this Court.

> The question, then, is whether notions of judicial economy dictate the joinder of those claims in a single Law Division action. The Court concludes that plaintiff's claims should be so joined. Just as we view piecemeal litigation as anathema, we also look with disfavor upon the unnecessary bifurcation of disputes between judicial resolution and arbitration. Ohio Cas. Ins. Co. v. Benson, 87 N.J. 191, 199 (1981).

**CONCLUSION**

For the foregoing reasons, the Motion to Compel Arbitration should be denied.

Respectfully submitted,
**PRICE, MEESE, SHULMAN & D'ARMINIO, P.C.**
*Attorneys for Plaintiff, Joseph Mele*

*s/Ellen O'Connell*
By: ________________________________
Ellen O'Connell

Dated: January 20, 2026